FILED, Case 3:18-cv-02361-MAS Document 2-4 Filed 09/14/18 Page 1 of 29 PageID: 6364
FILED, Clerk of the Appellate Division, July 15, 2015, A-001215-14
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

1            SUPERIOR COURT OF NEW JERSEY
             LAW DIVISION – MIDDLESEX COUNTY
2            INDICTMENT NOS. 05-10-00164-S
                             06-10-00119-S
3            APP. DIV. DOCKET NO. 006576-06-T4

4    ─────────────────────────────

THE STATE OF NEW JERSEY
5
         vs.                      Transcript of Sentencing
6
MELANIE McGUIRE,
7
             Defendant.
8    ─────────────────────────────

9                      Place:  Middlesex County Courthouse
                               56 Paterson Street
10                             New Brunswick, New Jersey

11                     Date:  July 19, 2007

12   B E F O R E:

13       HONORABLE FREDERICK P. DeVESA, J.S.C.

14   TRANSCRIPT ORDERED BY:  Helen C. Godby, Esq.
                             Office of the Public Defender
15
A P P E A R A N C E S:
16
         PATRICIA PREZIOSO, ESQ.
17       and CHRISTOPHER S. ROMANYSHYN, ESQ.
         Deputy Attorney Generals
18       Attorneys for the State

19       JOSEPH TACOPINA, ESQ.
         (Firm of Joseph Tacopina, Esq.)
20       STEPHEN TURANO, ESQ.
         (Firm of Stephen Turano, Esq.)
21       Attorneys for the Defendant

22                            Linda Urbaniak
                              Certified Court Reporter
23                            Official Court Reporter
                              Middlesex County Courthouse
24                            56 Paterson Street
                              New Brunswick, New Jersey
25

| Appearances | 2 |
|---|---|

1    THE COURT:  All right.  Good morning, ladies
2  and gentlemen.
3    This is the matter of State v. Melanie
4  McGuire and we're here for sentencing and other
5  purposes today.
6    I apologize for the crowded conditions, but
7  there are many of you here who are very interested in
8  these proceedings.  I will ask that during the course
9  of these proceedings I have no doubt that some of you
10  may hear statements and may receive information that
11  may be very upsetting to you.  I urge your cooperation
12  in allowing these proceedings to go forth without
13  interruption.  Please do not in any way state anything
14  or engage in any conversation or make any remarks
15  during the course of these proceedings because it will
16  simply just delay the completion of the proceedings, so
17  I urge your cooperation.  Do the best you can.
18    Now, counsel, may I have your appearances.
19    MS. PREZIOSO:  Assistant Attorney General
20  Patricia Prezioso for the State.
21    Good morning, Judge.
22    MR. ROMANYSHYN:  Good morning, your Honor.
23    Deputy Attorney General Christopher
24  Romanyshyn also for the State.
25    MR. TACOPINA:  Good morning, your Honor.

| Motion | 3 |
|---|---|

1    Joseph Tacopina for Miss McGuire.
2    MR. TURANO:  Good morning, your Honor.
3    Stephen Turano also for Miss McGuire.
4    THE COURT:  All right.  Good morning,
5  counsel.
6    The first order of business that we have
7  today is to address the motion for a new trial based on
8  possible newly-discovered evidence that was filed by
9  the defense some days ago.  And I understand, now
10  having conducted further investigation and reviewed the
11  prosecutor's -- the attorney general's response, that
12  the defense has an application.
13    MR. TACOPINA:  Your Honor, based on obviously
14  the investigation that was done and conducted and the
15  events surrounding this witness' initial statements and
16  later statements, we're withdrawing the motion that we
17  filed in regards to that newly-discovered evidence.
18    THE COURT:  Any objection from the attorney
19  general?
20    MS. PREZIOSO:  Your Honor, if I just could
21  seek a clarification.  Am I correct that the defense is
22  conceding that this new witness is entirely incredible
23  and unreliable?
24    MR. TACOPINA:  Your Honor, when we filed that
25  motion we in no way, shape or form adopted, embraced

## Motion 4

```
 1  that witness' statements.  We -- I just withdrew the
 2  motion, but being that we need clarification I'll give
 3  some.
 4           We were presented with the situation where
 5  someone from a jail wrote me a letter claiming to have
 6  information relevant to this case that he claimed he
 7  had and just became aware of the case after the
 8  conviction.  We were duty-bound to explore it,
 9  investigate it and present it to the Court to ask, if
10  truthful, that this potential evidence may be something
11  that could have affected the verdict or at least to
12  hold a hearing, your Honor, to determine if it was
13  credible.  Clearly this witness is not credible in any
14  way, shape or form regarding his initial statement,
15  regarding his later statements, regarding anything
16  about the witness, so we are withdrawing the motion
17  because there is absolutely no evidence to suggest that
18  this witness is credible in anything he has said.  And
19  that's the basis of our withdrawing the motion.
20           THE COURT:  All right.  Thank you, Mr.
21  Tacopina.
22           All right.  So, counsel, I would like to move
23  on to sentencing at this time.  Let me begin by saying
24  that I have carefully reviewed the presentence report,
25  the various submissions by counsel, the various letters
```

## Sentencing 5

```
 1  from the family and friends of both the victim and the
 2  defendant and certain psychological evaluations that
 3  were submitted in connection with the presentence
 4  report, so at this point I would ask counsel to simply
 5  summarize or highlight that information that is
 6  pertinent to these proceedings.
 7           Mr. Tacopina, I'd like to call upon the
 8  defense first, number one, if there are any additions
 9  or corrections to the presentence report that you would
10  like to bring to the Court's attention and also for you
11  to make any statements or arguments you want to make on
12  behalf of the defendant or call upon anyone that you
13  wish to call upon.
14           MR. TACOPINA:  Your Honor, let me address
15  first the presentence report regarding whether we have
16  any objections, additions or corrections.  We have
17  none.  The only thing I will say in that regard is we
18  do not adopt obviously the State's version of offense
19  that's contained within the presentence report.
20  Certainly I understand it's placed here and entirely
21  proper.  We just don't adopt that or accept that, but
22  it's not something that we have grounds to object to.
23  It belongs in the report because it's the State's
24  version of the offense.  So other than that we have
25  no -- no further objections to that.
```

FILED, Case 3:18-cv-02341-MAS Document 002 5844 Filed 09/14/18 Page 4 of 29 PageID: 6367
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

```
 1          THE COURT:  I think -- I know the Court's
 2   copy includes your -- your motion, your sentencing
 3   memorandum, if you will.  We have included that in the
 4   presentence report so that the Department of
 5   Corrections and anyone else who's in receipt of the
 6   presentence report will have version, if you
 7   will --
 8          MR. TACOPINA:  Yes.
 9          THE COURT:  -- of what took place.  Is it
10   attached to your copy?
11          MR. TACOPINA:  It is, your Honor.
12          THE COURT:  All right.  So I just want to
13   make sure.  All right.  Very well then.
14          Mr. Tacopina, would you like to make any
15   statements at this time or do you wish to call upon
16   someone?
17          MR. TACOPINA:  Your Honor, I'm going to be
18   very brief.  I know one thing I've come to know about
19   you is you read everything very carefully, and we made
20   a submission regarding what we believe are relevant
21   factors for your consideration in regards to the
22   sentencing and we've attached reams of letters from
23   people who know Melanie McGuire, and I know you've read
24   them and considered them.  I'd like to be very brief in
25   regards to that.  I don't have much to say outside of
```

```
 1   that, the four corners of our papers.
 2          I think first though the one person who I'd
 3   like to call on to speak about Melanie, someone who
 4   knows Melanie, and that's Allison, a friend, Allison
 5   LiCalsi, and she's in court today, and that will be the
 6   only person I think we intend to call for the purpose
 7   of brevity combined with our letters, your Honor.
 8          THE COURT:  Is Miss LiCalsi here?
 9          MS. ALLISON LiCALSI:  I'd like to say a few
10   words on behalf of Melanie.
11          I've been a friend of Melanie since 1987,
12   twenty years is a long time, and in that time I've come
13   to know Melanie as the person she truly is.  I can
14   honestly say she is not the woman depicted by the
15   prosecution, the media and the internet blogs.  That
16   creation, that fiction, bears no resemblance to
17   Melanie, and that has been so difficult for Melanie and
18   her loved ones to endure.  The Melanie I know, the real
19   Melanie, the Melanie who's cherished by her countless
20   loved ones, is a kind, caring, sincere individual.  Her
21   sassy sense of humor and quick wit are balanced by her
22   warm and generous spirit.  I cannot begin to convey
23   what Melanie means to me or her other friends and
24   family members.  I can only tell you she is a beloved
25   daughter, a loyal, giving friend and a dedicated and
```

Sentencing                                                  8

1   loving mother.
2             She chose the nursing profession because of
3   her desire to help others and she continues to help
4   others even while in jail.  In my letter to the Court
5   I mentioned that Melanie was acting as a tutor to
6   a woman who is a high school dropout.  I've since
7   learned that she's also using her nursing skills.  She
8   recently took care of a fellow inmate who was
9   withdrawing from heroin addiction.  For anyone who
10  knows what that entails, that person would agree that
11  this is a selfless act.
12            In accordance with strict guidelines, I'm the
13  only one speaking for Melanie today, but there are so
14  many others who would have spoken for her had they had
15  the chance and who continue to support her and believe
16  in her innocence.  Among them are her parents; her
17  brother Christopher Cappararo; her friend of almost
18  three years, Selene Trivizas.  Speaking in front of you
19  today is one of the hardest things I've had to do.
20  I find this gut-wrenching, but I understand it needed
21  to be done.
22            I've often been told Melanie is lucky to have
23  me for a friend, but the truth is I'm lucky to have
24  her.  The fact I'm standing before you today says so
25  much more about her than it does about me.  Friendship

Sentencing                                                  9

1   works both ways and we tend to get what we give.  My
2   willingness to speak for Melanie is a reflection of
3   her, an accurate reflection of the woman she truly is.
4   The support Melanie's loved ones give to her is in
5   direct proportion to all she's giving us.
6             In life we meet many people, most friendships
7   come and go, but a few precious remain.  I stand here
8   today profoundly sad but also deeply proud and honored
9   to call Melanie McGuire my friend.
10            Thank you.
11            THE COURT:  All right.  Thank you, Miss
12  LiCalsi.
13            And the record should reflect that, Miss
14  LiCalsi, you should know that the Court has read the
15  letters that were submitted to the Court from the
16  individuals that you mentioned, so I am considering
17  their comments and remarks.
18            Okay.  Mr. Tacopina.
19            MR. TACOPINA:  Yes, your Honor.  Just
20  briefly, sir.
21            Your Honor's familiar with our submission and
22  our request.  I know we're limited in what we can do
23  here today as far as seeking mitigation and -- and
24  asking for leniency.  My request for leniency would be
25  based on Melanie McGuire's character and the

FILED, Case 3:18-cv-02345-MAS Document 002-4 Filed 09/14/18 Page 6 of 29 PageID: 6369
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

```
 1   appropriate mitigating factors that I think are set
 2   forth, your Honor, in the New Jersey Codes.  That being
 3   said, leniency is not, your Honor, based on an apology,
 4   an acceptance or responsibility or -- or any remorse
 5   whatever.  Melanie McGuire's innocent.  She was
 6   convicted.  We respect the jury's verdict.  We don't
 7   agree with it.  We're going to fight this case through
 8   the appellate process, your Honor, but for the purposes
 9   of today I do want the Court to consider what I think
10   is appropriate factors for sentencing, and certainly
11   those, your Honor, would be the character letters
12   you've seen regarding Melanie McGuire.
13            First of all, regarding the law, and this is
14   not a legal argument today, your Honor, but I think the
15   New Jersey Supreme Court in Yarbough promulgated the
16   five factors that -- that the Court needs to consider
17   in determining whether sentences should be concurrent
18   or consecutive.  I know your Honor's familiar with
19   them, they're outlined in our submission to you, but in
20   regards to the single period of aberrant behavior
21   standard that's laid out in that case, your Honor,
22   under the State's own theory of prosecution here, Miss
23   McGuire was either acting alone as a principal or an
24   accomplice when she committed the crimes that they have
25   alleged she's committed she stands before you to be
```

```
 1   sentenced on today and then engaged in various conduct
 2   including desecrating the remains and perjury in order
 3   to conceal her involvement according to the State.  As
 4   such, your Honor, the murder and possession of a
 5   firearm, conduct and the desecrating were temporally
 6   and logistically related to one another and I think
 7   their objectives are so interrelated to represent
 8   a single period of aberrant behavior.  I don't think
 9   there would be any question that this conduct, if true,
10   would be aberrant in the life of Melanie McGuire.
11            Your Honor's heard character testimony
12   presented at trial regarding Melanie both from State
13   witnesses and certainly from defense witnesses.
14   I hearken back to one who has really left a profound
15   impact on my mind's eye, that was Melissa Blake, the
16   young girl who came in here in a wheelchair and really
17   talked about what Melanie McGuire meant to her and her
18   family and the Blakes, the parents.  Lorraine came in
19   here and talked about how gentle, caring and passionate
20   Melanie is and what she meant to so many people.
21            Your Honor, we had, as you know, a list of
22   50 to 60 people who would have loved to have come here
23   and testify regarding Melanie's character, and
24   certainly we were bound by the laws regarding the
25   admissibility of certain testimony, but I think so many
```

Sentencing                                                    12

```
 1   different people have come to this one conclusion, the
 2   people who know Melanie McGuire, the people who have
 3   come to know her both as a friend, from a professional
 4   standpoint, that Melanie is giving of herself, has been
 5   a rock to many, has gotten people through incredibly
 6   difficult times.  Her impact, and I think one of the
 7   State's witnesses, Dr. Scott who was the -- I think the
 8   head of R.M.A. where Melanie worked, really in one
 9   moment during his testimony looked over at her and
10   talked about the type of person, the type of nurse, she
11   was and what she meant to her patients.  She was
12   incredible as far as her professional skills were
13   concerned, but more incredible as far as her passionate
14   people skills were concerned.  She's been described,
15   your Honor, I know you've read all the letters, as
16   warm-hearted and loving and someone who would give of
17   herself before putting herself into her own
18   considerations.
19           And, you know, your Honor, Miss LiCalsi just
20   said something I was going to bring up, but our -- from
21   our conversations with prison officials and my
22   information, Melanie McGuire continues to be that
23   person today even -- even though she's in a place where
24   we firmly believe she doesn't belong.  She helps people
25   that she's housed with.  She helped someone with an
```

Sentencing                                                    13

```
 1   addiction, she helped someone with an emotional issue
 2   and she really has been looked upon by the staff as
 3   a model inmate and she continues to do what she's done
 4   all her life which is help others, care for others.
 5           Your Honor, I to this day get 10 or 12
 6   E-mails from people who know her and offer their help,
 7   want to be heard, and all I could do is let them know
 8   that I would try and relay, and we did through our
 9   letters to everyone here, to your Honor, who the real
10   Melanie McGuire is and that's the person who I want you
11   to consider, your Honor, when you're making your
12   sentencing judgment.
13           Again I know -- I know we're limited as far
14   as what we could ask for, and the best we could walk
15   out of here today, your Honor, is a sentence of
16   30 years without the possibility of parole.  That's
17   an enormous sentence and I find myself at a loss asking
18   for a sentence like that for Melanie McGuire, but
19   that's what I'm asking for.
20           I think the mitigating factors that are
21   outlined in our papers, your Honor, and that are
22   factors that should apply according to N.J.S.A. 2C,
23   defendant has led a law-abiding life for a substantial
24   period of time, the character of the defendant
25   indicates she is unlikely to commit another offense, so
```

Sentencing                                                                14

1  I think that's not an issue, and that the defendant's
2  incarceration would entail excessive hardship on
3  dependents.  I'm not going to say much more about that
4  last prong, your Honor, but I know the Court's aware of
5  what this profound impact is having on others today and
6  the two dependents who do in fact depend on Melanie
7  McGuire.
8          Your Honor, I'd ask you to consider all these
9  factors, Melanie McGuire's character, the letters we
10 submitted and giving her a sentence of 30 years,
11 because I think this was, according to the State's
12 theory of prosecution, an aberrant act in an otherwise
13 remarkable life, a life that really went above and
14 beyond.
15         I know you read the letter of Mr. Sclafani
16 who talked about how he still believes Melanie McGuire
17 saved his life, he was going to commit suicide.
18 There's so many, so many stories that parallel that
19 that it's uncanny.
20         But I do ask for the 30 years, your Honor,
21 with the sense of -- indignation perhaps isn't the
22 right word, but we in no way, shape or form agree with
23 this verdict, we in no way, shape or form apologize for
24 her conduct.  She did not commit this crime.  I do
25 sympathize and we all sympathize with the family of

Sentencing                                                                15

1  William McGuire and what happened to him, and -- and
2  make no mistake about that, and he is a victim and they
3  are victims, but Melanie McGuire and her family are
4  victims as well.
5          I'd ask your Honor to consider all these
6  factors in imposing your sentence.
7          Thank you.
8          THE COURT:  All right.  Thank you,
9  Mr. Tacopina.
10         Miss Prezioso.
11         MS. PREZIOSO:  Yes, your Honor.  And, if the
12 Court doesn't mind, I'd like to use the podium.
13         THE COURT:  Of course.
14         MS. PREZIOSO:  Judge, as you are aware, the
15 State has submitted a detailed sentencing memo setting
16 forth what our recommendations are and the reasons for
17 them.  I do have some comments today, however, Judge,
18 and these comments are intended to supplement and
19 highlight certain points of the brief.
20         Today, today, Judge, marks the end of the
21 trial process and many of William McGuire's friends and
22 family are with us today and in a little while some of
23 those people, Judge, will be addressing the Court and
24 making victim impact statements.  Laura Ligosh, Bill's
25 niece, John Rice, one of Bill's best friends, and Cindy

Sentencing                                          16

 1  Ligosh, Bill's sister, will speak and describe to the
 2  Court how this crime has impacted their lives.  I speak
 3  today, Judge, as always, representing the State of
 4  New Jersey.
 5          On April 28th, 2004, or thereabouts,
 6  New Jersey lost one of its citizens and, Judge, the
 7  person that was killed on that day is somebody that
 8  this Court and the media have not heard much about.
 9  I was not fortunate enough to know Bill McGuire.  His
10  family, when they speak, his family and friends, will
11  have their opportunity to share with the Court what
12  Bill McGuire was like in life.  Your Honor, I will, as
13  I always have in this courtroom, restrict my comments
14  to the evidence that was presented at trial, and in
15  doing just that I would like to respectfully point out
16  to the Court that although there was much discussion
17  about the victim in this case, Mr. McGuire, there was
18  not one shred of evidence, Judge, not one shred, that
19  came from that witness chair that detailed Bill McGuire
20  to be anything other than a loving father and husband.
21  During the trial we didn't hear much about Bill
22  McGuire's life at all because, as the rules of our
23  state require, when we were here we were focused on his
24  death, but I do trust that his family and friends in
25  a short time will fill in that gap.

Sentencing                                          17

 1          We did hear, however, Judge, during the trial
 2  a great deal about Melanie McGuire; however, your
 3  Honor, we didn't hear everything about Melanie McGuire
 4  and I would respectfully like to remind the Court that
 5  even today, even with those character letters, we still
 6  have not heard everything about Melanie McGuire.
 7          Your Honor, the evidence showed that Melanie
 8  McGuire is someone who kept secrets from her family and
 9  friends, a secret affair that your Honor is aware not
10  with just one man but with two during her short
11  marriage to Bill McGuire.
12          Now, your Honor has received several letters
13  on the defendant's behalf submitted on the defendant's
14  request, and I know, as is the habit of this Court,
15  that the Court will evaluate and consider them
16  appropriately, but I would like to point out to the
17  Court that this is a defendant who puts on a face and
18  shows persons before her whatever it is she wants them
19  to see and as I stand here today as a prosecutor who
20  has investigated the case for three years I don't know
21  who the real Melanie McGuire is.
22          Now, your Honor, there are obviously people
23  in this courtroom who love this defendant very, very
24  much, and the State does recognize that today is
25  a tragedy for them as well; however, I would be remiss,

FILED, Case 2:18-cv-02431-MAS Document 02:84 Filed 09/14/18 Page 10 of 29 PageID: 6373
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

1  Judge, if I did not offer or request, if you will, the
2  Court to consider that it was some of the attributes
3  touted as being beneficial to Miss McGuire's character
4  those attributes provided her and enabled her to
5  brutally and dispassionately kill and desecrate her
6  husband.  It was that the defendant, when she wants to,
7  can be a very loving and kind person that made Bill
8  McGuire fall in love with her and elect to spend his
9  life with her.  It was her friendships and loyalties
10 that she developed with persons like Jim Finn that
11 permitted her, when she needed it, to get information
12 on how to purchase a gun.  It was her previous
13 relationships with her sisters-in-law, Nancy Taylor and
14 Cindy Ligosh, that permitted her to successfully lie
15 when Bill went missing and delay the investigation in
16 starting.  It was her nursing experience that enabled
17 her to fill out that prescription and ultimately poison
18 Bill McGuire to the point where he was incapacitated
19 and unable to fight for his life.  It was the fact that
20 she surrounded by a close-knit family and friends that
21 made her feel protected and worthy of belief.  All of
22 this, Judge, permitted her to plan this murder, execute
23 her husband, plant and create evidence to cover her
24 tracks and then later try to control the investigation.
25          And to be certain, Judge, to be certain,

1  there is nothing that this killer has done in her
2  lifetime that mitigates against her taking the life of
3  the man that she promised to love and cherish for the
4  rest of his.  There are no mitigating factors, Judge,
5  but, however, there are aggravating factors.  And
6  again, Judge, I'm just going to highlight the main
7  points.
8          But I'd like to begin by pointing the Court's
9  attention to the nature and circumstances of this
10 offense.  The evidence showed that this killing was
11 deliberate, planned and the product of a great deal of
12 not only consideration but of research.  The
13 complexity, premeditation, calculation and planning
14 indicates a coldness and viciousness that is beyond
15 what we regularly see in even our murder prosecutions,
16 and your Honor is well aware that our murder statute is
17 the same for all murders, and under the laws of our
18 state it leaves the Court to separate those that have
19 aggravating factors and are worthy of higher sentences
20 from those that are not even among all murders which
21 are the most despicable crime that is listed in our
22 penal law.
23          In this case, Judge, we have a defendant who
24 cunningly incapacitated her husband with drugs she got
25 from a forged prescription, shot him with an illegally

FILED, Case 3:18-cv-02421-MAS Document 102-14 Filed 09/14/18 Page 11 of 29 PageID: 6374
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

1  obtained gun and then cut his body into pieces and
2  disposed of him as if he were trash.  If that's not
3  enough, add in that she planted his car in Atlantic
4  City, faked phone calls and E-mail communications to
5  look as if he were alive, manipulated E-Zpass records
6  to cover her tracks, lied under oath committing perjury
7  in our courts to fabricate a defense all the while
8  while lying to those who loved Bill McGuire.  Bill
9  McGuire's body was left butchered, his body parts left
10 to rot in three suitcases that were dumped in the great
11 expanse of the Chesapeake Bay.  His body was cut up
12 with at least two instruments using great care to
13 conceal the crime scene.  His desecrated body was bled
14 out like an animal, left being bled, slaughtered, all
15 to protect this defendant from getting caught, then his
16 body was driven far away to another state without
17 identification, for the most part without any clothing,
18 and dumped in the water.
19        It took nearly a month for law enforcement to
20 be able to identify Bill McGuire.  And, your Honor, I'd
21 like to direct the Court's attention specifically to
22 the anguish that his family and friends endured during
23 that month where every time the phone rang they were
24 hoping it was him, they were hoping it was their
25 brother, but, Judge, it never was.  Anguish -- their

1  anguish was later met with lies after his
2  identification, lies about Bill McGuire being involved
3  in a Mafia, with loan-sharks, with organized crime.
4  This defendant desecrated his body and then she began
5  to desecrate his memory and she continues to do so to
6  this day.
7        The nature and circumstances of this case
8  alone, Judge, just that one factor, gives this Court
9  ample support to give this defendant the maximum
10 penalty.  But there's more.
11       Factor two in 2C:44-1a, subsection two, the
12 age and vulnerability of the victim, I'd like the Court
13 to focus its attention on the vulnerability of the
14 victim because our case law supports applying this
15 factor where the victim is rendered substantially
16 incapable of exercising normal physical or mental power
17 of resistance and, as cited in the brief, that's under
18 State v. O'Donnell.  This defendant incapacitated this
19 victim with Chloral Hydrate so he couldn't fight for
20 his life.  He trusted and loved his killer, Judge.
21 Bill McGuire never got to fight for his life because
22 this defendant made sure he couldn't and for that
23 reason this -- this aggravating factor should apply.
24       Additionally, Judge, you should apply factor
25 three, the risk of another offense.  This defendant

1   stands before you not accepting any, any responsibility
2   for this crime.  She continues to deny her
3   participation and displays a total and complete lack of
4   remorse.  She clearly is somebody that is used to being
5   believed.  She displays an arrogance as if she is
6   entitled to be above the law.  Even now after verdict
7   she continues to give interviews, one as recent as just
8   two days ago denying her involvement, alleging that her
9   problems in her marriage and this murder were all about
10  Bill, that almost that -- that this victim was at fault
11  in his own death.  Defendant has shown by her crimes
12  here that she will do whatever it takes to get her way.
13  She would not let anything as insignificant as the laws
14  of the State of New Jersey or the laws of society keep
15  her from doing what she thinks is best for her.  Her
16  actions exhibit a viciousness and a need for control
17  that I submit to the Court separates her from most
18  every other prisoner that are in our jails.  Her past
19  actions prove her in that regard to be dangerous,
20  Judge, very dangerous.  She has no regard for our laws
21  unless she believes that they inure to her benefit.
22  She would not hesitate to break these laws, Judge, or
23  to do this again, and for that reason she should never,
24  ever walk free again.
25         I'd also like to point the Court to the need

1   to deter, that would be subsection nine of the same
2   statute, and point out to the Court, Judge, that she
3   had other choices.  She could have divorced Bill
4   McGuire.  She opted for what she believed would be
5   easier for her in the long-term and in recent --
6   unfortunately, Judge, in recent years killing spouses
7   has become rather popular.  The need for public safety
8   and deterrence increases proportionately with the
9   degree of the offense and, as your Honor is well aware,
10  there is no greater wrong than murder.  This defendant
11  and others need to see that killings -- killing one's
12  spouse is not an option when faced with wanting to
13  leave a marriage.  Further, well-articulated excuses
14  and manipulation cannot get anyone, even those who
15  don't look like criminals, around the law.
16         Judge, specifically on the perjury charge the
17  Court (sic) would like -- would ask you to consider the
18  defendant's prior record which the Court knows includes
19  receiving Pretrial Intervention for a prior perjury
20  that occurred in Union County in 1997.  Despite the
21  second chance afforded to this defendant through that
22  program, she still opted knowing full well and very
23  well that perjury is a crime in this state.  She
24  elected to do the same thing again and use our courts,
25  and in this time, Judge, it was to create a defense for

FILED, Case 2:18-cv-02431-MAS Document 02-14 Filed 09/14/18 Page 13 of 29 PageID: 6376
FILED, Clerk of the Appellate Division, July 18, 2018, A-002184-14
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

Sentencing                                        24

1   her and conceal her own crimes.
2          Moving on from aggravating circumstances,
3   Judge, I'd like to briefly discuss consecutive
4   sentences, and your Honor is well aware of the factors
5   to be considered as articulated in State v. Yarbough.
6          Judge, the State is requesting that the Court
7   impose sentences on the desecration and the perjury
8   consecutive to the murder and consecutive to each
9   other.  The reasons are -- are well-articulated in the
10  brief, Judge, but -- but, to put succinctly, they were
11  separate and distinct acts.  Each of those acts, the
12  cutting up of his body and the perjury, added to this
13  crime.  The desecrating certainly added to the horror
14  that his family had to endure.  To run the sentences
15  concurrent would be tantamount to giving this defendant
16  the desecration and the perjury for free.  There should
17  be separate sentences.  They had separate -- she had
18  separate objectives.  First she killed him, the murder
19  charge, then she cut him up to get rid of his remains,
20  the desecration, and then she lied about it in court,
21  the perjury.  The crimes were separated in time and
22  space, so they clearly were not the product of one
23  single period of aberrant behavior.  Each of these
24  crimes required separate and protracted planning and
25  consideration.  None of these crimes were rash.  They

Sentencing                                        25

1   were well thought out and carefully executed.  Each as
2   such deserves a separate punishment.
3          Your Honor, the State is requesting that the
4   maximum sentence on these crimes be imposed.  The
5   maximum sentence will insure that this defendant never
6   walks free again.  Specifically, Judge, we're asking
7   for life on the murder, consecutive 10 on the
8   desecration and consecutive five on the perjury.  As
9   articulated in the brief, the State concedes that by
10  ordinance of law the gun charge merges with the murder.
11         Your Honor, while she's in jail she will
12  still get to visit with her family and friends.  She
13  will get to read books, watch TV, keep up with current
14  events, feel sunshine on her face.  Bill McGuire won't.
15  Bill McGuire will never speak another word.  His
16  family, many of whom are in court today, will never
17  hear his voice again.  He will not see his children
18  grow up.  He will never get the satisfaction of seeing
19  his children living in the house that he worked so hard
20  to get for them.  He will never, ever feel sunshine on
21  his face.  It would be an injustice if after doing
22  these horrific acts that took Bill McGuire from the
23  face of this earth and hurt so many people who loved
24  him if she were ever to be released from prison.
25         Many, your Honor, have been treating this

FILED, Case 3:18-cv-02431-MAS Document 2-184 Filed 09/14/18 Page 14 of 29 PageID: 6377
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

```
 1  case as if it's a mystery.  The State stands before you
 2  with the mystery solved.  She has been found guilty of
 3  one of the most calculated and horrific murders in
 4  recent time within our state.  She deserves no special
 5  treatment.  She killed her husband with careful
 6  premeditation, she killed the father of her children
 7  and those boys who Bill McGuire loved so dearly will
 8  live the rest of their lives without him.  They won't
 9  have a father or a mother because of the actions of
10  this defendant.  She should be shown no more compassion
11  by this Court than she showed her husband.  She
12  deserves and justice requires that she be in jail for
13  the rest of her life.  The State of New Jersey deserves
14  finality in knowing that this killer will never hurt
15  another person.  Bill McGuire's family and friends
16  should be given peace knowing they won't have to attend
17  a parole hearing for at least 63 and three-quarter
18  years.  And please, Judge, please deliver that justice
19  today.  Please sentence her to life plus 15.
20          And, your Honor, with that I would like to
21  ask Laura Ligosh to come forward.
22          THE COURT:  Good morning, Miss Ligosh.
23          I just want to just reiterate for you that
24  under the laws of this State and the Constitution of
25  this State you have a right to come here today and
```

```
 1  you're entitled to tell me about the impact that this
 2  crime has had upon you and your family.  I must ask you
 3  to direct your remarks only to me, not to anyone else
 4  in the courtroom, and please do not make any personal
 5  attacks on anyone in the courtroom, just explain to the
 6  Court so that I can consider your statement the impact
 7  that this crime has had upon you and your family.
 8  Okay?
 9          MS. LAURA LIGOSH:  Okay.
10          When I remember my uncle the first thing --
11  the first thing I see is a water-logged suitcase.  The
12  suitcase is open, filled with black plastic trash bags.
13  The bags are pushed aside and I see two long, pale
14  objects.  These objects are a man's legs.  No body,
15  no face, just parts.  I recognize these legs.  These
16  are my Uncle Billy's legs.  We used to tease him
17  endlessly about the silly shorts he loved to wear,
18  proudly parading the vast majority of his chubby,
19  pasty-white Irish legs for all of us to see.  Now those
20  legs are only a gruesome reminder of the way he was
21  murdered.
22          When I remember my uncle's face I don't see
23  his infectious grin and the boyish mischief in his
24  eyes.  I see that pencil sketch rendered by the
25  Virginia Police Department of a body that was pulled
```

Sentencing                                                        28

1   out of the water on three separate days.  No name,
2   no voice, just lifeless eyes set in a bloated shape and
3   head.
4          When I remember my uncle's wedding I don't
5   see a handsome, happy man in a snappy black tuxedo with
6   a spring in his step.  I see a diagram of a body that
7   has been horribly desecrated, carved up into parts
8   small enough to fit into three little suitcases.
9          When Melanie McGuire awaits her sentence for
10  a brutal, calculated murder Billy McGuire's family and
11  friends suffer in the wake of her actions.  A lifetime
12  in prison is not nearly enough compensation for all the
13  crimes committed by this woman, for many of her crimes
14  were committed outside the scope of those acts
15  punishable by law.  Beyond taking Billy McGuire's life,
16  she has taken something deeper from all of us, our
17  innocence, our faith in humanity, our willingness to
18  trust blindly those we love.  She has stolen our
19  smiles, our laughter, our joy.  What compensation could
20  the Court offer any of us for the loss of a brother,
21  an uncle, a friend?  Her greatest crime is not what she
22  did to my uncle, but what she stole from his two sons.
23  What compensation could the Court offer those children
24  for the loss of a future with their loving, devoted
25  father?

Sentencing                                                        29

1          She has taken so much from so many and all
2   she has given in return is a sad and tarnished memory
3   of a respected and beloved man.  The family and friends
4   of Billy McGuire will suffer his loss for the rest of
5   our days while this heartless murderer stands only to
6   suffer the loss of her freedom.  All we could ask, that
7   you take her freedom as she took our Billy.
8          Thank you.
9          THE COURT:  All right.  Thank you, Miss
10  Ligosh.
11         MS. PREZIOSO:  Your Honor, we would ask John
12  Rice to come up next.
13         MR. JOHN RICE:  Judge, for the past three
14  years our anger, pain and frustration as a result of
15  Bill's murder has never ceased.  First and foremost,
16  Bill McGuire was an integral part of our family and was
17  a victim of a heinous crime.  Our anger and frustration
18  are a result of how he was brutally murdered,
19  dismembered and thrown away like garbage.  We've had to
20  endure our friend's reputation being dragged through
21  the mud.  Bill's minor imperfections were magnified to
22  cover the acts of a selfish, arrogant and manipulative
23  individual.  Bill's life was not dispensable.  His life
24  was of immense value to his real family and friends and
25  he's greatly missed.

FILED, Case 2:18-cv-02431-MAS Document 4-14 Filed 09/14/18 Page 16 of 29 PageID: 6379
FILED, Clerk of the Appellate Division, July 18, 2018, A-002184-14
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

```
 1          Since the day that we found out our friend
 2  was missing our lives have never been the same.  We've
 3  had to live with bouts of depression and the physical
 4  sickness that accompanies depression.  We will never be
 5  able to forget having to view gruesome pictures of our
 6  friend's bloated face to identify his body.  Those
 7  hideous images will forever be burned in our memory.
 8          I will never have another best friend like
 9  the one I found in Bill.  If needed, Bill would give me
10  the shirt off his back.  I hate the fact that I cannot
11  pick up the phone and talk to Bill.  Now after three
12  years Sue and I find ourselves defending Bill's honor
13  and his memory.  After being a computer engineer at
14  N.J.I.T., an -- after being a computer technician in
15  the U.S. Navy Bill put himself through college, was
16  a computer engineer at N.J.I.T., an adjunct professor
17  at N.J.I.T. and co-owned a computer consulting
18  business.  Bill was a hard worker, innovative and had
19  a passion for life.  I wish you could have known him.
20          Bill was a protective husband, a loving
21  father and wanted the best for his family.  Anybody
22  that would say different has something to hide.  It is
23  so frustrating to continue to hear lies about the
24  person we've known for over 20 years.  No one deserves
25  to be murdered, dismembered and thrown away like
```

```
 1  garbage.  Bill certainly did not deserve such
 2  treatment.
 3          Sue and I believe that the person responsible
 4  for Bill's death, Melanie McGuire, should have to serve
 5  the maximum term allowable by law for each indictment
 6  in which she has been found guilty.  Bill had no
 7  rights, nor can he appeal his death.  If Bill would
 8  have one-tenth of the rights that Melanie has enjoyed
 9  these past three years he would still be alive today.
10          Thank you, Judge.
11          THE COURT:  Thank you, Mr. Rice.
12          MS. PREZIOSO:  Judge, we'd ask Cindy Ligosh,
13  Bill's sister, to come forward.
14          MS. CINDY LIGOSH:  Good morning, your Honor.
15          THE COURT:  Good morning.
16          MS. CINDY LIGOSH:  The day we were notified
17  that my brother's body had been found in three
18  suitcases, shot multiple times, his body desecrated and
19  dumped into the water like garbage was the darkest day
20  that our family has ever experienced.  Our loved one
21  was taken from us quickly and violently.  Such
22  unthinkable horror is something read about only in
23  books and newspapers.  It happens to someone else,
24  anyone else, just not you, never to you.  We were as
25  naive as most people to think that we were somehow safe
```

FILED, Case 2:18-cv-02431-MAS Document 2-8 Filed 09/14/18 Page 17 of 29 PageID: 6380
FILED, Clerk of the Appellate Division, July 18, 2018, A-002184-14
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

 1  from something so brutal ever touching our lives, but
 2  we were wrong.  This nightmare did happen to us, to our
 3  loved one.  It happened to my sweet brother Billy and
 4  to his two sons, to Nancy's brother and to Laura, Max,
 5  to my husband Bill's brother-in-law, to Billy's aunts,
 6  uncles, cousins and to his godson Austin and it
 7  happened to his friends and co-workers.  All of us were
 8  devastated by his gruesome and untimely death and none
 9  of us will ever be the same again.
10       My name is Cindy Ligosh and I am Billy
11  McGuire's big sister.  And I spoke to my brother almost
12  every day.  More often than not, we spoke many times
13  a day, whether it was a quick hi, what are you doing,
14  or just to pass the time because we enjoyed each
15  other's company so much.
16       During the month that he was missing my phone
17  became strangely silent.  Billy suddenly stopped
18  calling and he couldn't be reached.  The fun
19  conversations were replaced with increasingly frantic
20  voice messages to call me, I'm worried, where are you,
21  what -- when will you answer your phone.  I even left
22  him one message telling him that he had better be dead
23  because that would be the only excuse good enough for
24  worrying me like this and then superstition got the
25  better of me and I quickly left another message saying

 1  I didn't mean that, please call me back.  And after his
 2  body was found I still kept calling just to hear his
 3  voice.  And those numbers are now disconnected and he
 4  has been forever silenced and I will never hear his
 5  voice again.
 6       When a loved one is taken so tragically, so
 7  heinously, it's almost impossible to wrap your mind
 8  around it.  Logically you know that they are dead, yet
 9  for months you have these moments, and these moments
10  are a small blessing, these moments when your
11  imagination steps in to relieve your heartache and for
12  a period of time you fantasize, maybe he's not really
13  dead, maybe they got it all wrong, they must have
14  gotten it all wrong.  My brother isn't dead.  It must
15  be a crazy reality show and he just has to fool his
16  loved ones into believing he died to win the grand
17  prize.  You convince yourself it could be a possibility
18  and your mind lets you go with it for a few seconds,
19  a few minutes, hopefully more, because you need that
20  relief.  You need to believe in anything other than the
21  awful truth because the truth is more than you can
22  stand, but soon you can't keep up a charade and you're
23  forced back into reality.  It's no game show.  It was
24  no mistake.  Billy isn't coming back.  Billy is dead.
25  He died horribly, all alone, on one of the happiest

FILED, Case 2:18-cv-02411-MAS Document 2-18 Filed 09/14/18 Page 18 of 29 PageID: 6381
FILED, Clerk of the Appellate Division, July 18, 2018, A-002186-14
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

1  days of his life.  There was nothing you could do to
2  help him.  And then you get angry, very angry, and the
3  cycle continues until you find a way to cope and to
4  bear the pain.
5           I've known for quite a long time that I would
6  have an opportunity to give an impact statement, an
7  opportunity that I looked forward to because it would
8  finally be my chance to let people know what kind of
9  man my brother truly was and how very much he will be
10 missed because he was loved.  At the same time I've
11 dreaded this day.  I don't want to be up her on display
12 sharing my private pain.  Billy has been through
13 enough.  We've all been through enough.  This is not
14 the forum where I wish to remember my brother.  This
15 room is filled with the vile details of his death and
16 there are people here that I do not wish to share my
17 personal memories with, yet I understand it is
18 necessary, so I will try to share what I can if it will
19 truly make a difference.
20          An impact statement is just that, the impact
21 that this crime has had on you, your feelings about the
22 crime, how your life has changed as a result, what
23 you've lost, what you've suffered, so I sat down and
24 attempted mant times to try to put into words
25 a lifetime of memories and joy that my brother meant to

1  me, to all of us, but every attempt I made was too
2  painful.  How could I begin to describe this loss and
3  how could this Court truly understand the depth of my
4  despair?  No one can understand exactly how I feel.
5  It's hard enough to lose someone through accident,
6  sickness or old age, but it's beyond comprehension to
7  lose someone this way, so as I wrote my eyes would
8  fill with tears until I could no longer see the page.
9  I was unable to separate memories into coherent
10 sentences no matter how hard I tried.  Feelings of
11 sorrow and anger are still raw and the anguish I feel
12 is unbearable at times.  I've been crying for three
13 years.  I love him and miss him more than words can
14 ever say.  There is an empty hole in my heart and
15 I can't foresee the day I will ever be at peace again.
16 I only had one brother and he's the only brother I will
17 ever have and he's now lost to me forever.
18          Perhaps the best way for me to help you
19 understand how much I've lost is to ask you to imagine
20 someone in your life that you may have loved very, very
21 much and that this someone had shared your life since
22 the day they were born and had loved you back just as
23 much as you loved them.  You shared the good times and
24 the not so good times.  They laughed with you, cried
25 with you, you gave each other comfort and a shoulder to

FILED, Case 2018-0221-MAS Document 0214 Filed 09/14/18 Page 19 of 29 PageID: 6382
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

1  cry on.  You knew everything about each other, could
2  finish each other's sentences and always got each
3  other's jokes, that special someone that you never had
4  to explain yourself to because they knew you better
5  than anyone else and always knew what was in your
6  heart.  They always had a smile for you to help you
7  feel better and he was always glad to hear from you,
8  you were glad to hear from them, a person you could be
9  completely honest with and he was completely honest in
10 return, someone whose opinion you valued, someone you
11 admired, a person who would always be on your side and
12 to stand by your side and would never turn their back
13 on you no matter what.  They would go to the ends of
14 the earth to find you, to help you, to make sure you
15 were always safe and happy.  This person is the one who
16 you knew would always be there for you, always, someone
17 who can't be replaced because there is no one else like
18 them in the whole wide world.  You treasure them and
19 count yourself lucky they were a part of your life, yet
20 you take it for granted they will continue to be a part
21 of your life for the rest of your life and it's a
22 person who -- well, you know what I mean, well, it was
23 my brother, and then in one God awful moment you learn
24 they are gone, taken away much too soon, no warning,
25 no time to prepare, no hug good-bye, no opportunity to

1  tell that person just once more how much they meant to
2  you and how much you loved them.
3        What I will remember most about my brother is
4  his heart, a forgiving heart, an understanding heart
5  and a soft heart made of gold.  He was a sensitive man
6  and he cried.  He cried sometimes when he was happy and
7  he cried sometimes when he was sad and I loved that
8  about him.  His heart was filled with compassion,
9  kindness and generosity towards others.  He always
10 wanted to make sure that everyone was doing all right.
11 He never held a grudge, was quick to forgive and forget
12 and would help anyone in need.  You never had to ask.
13 He'd just be there for you.  And whenever there was
14 family strife it was always Billy who would be the
15 peacemaker, who would step in and mend us.
16        What I will miss most about my brother is the
17 laughter, always the laughter.  You couldn't help but
18 want to be around him because he always had a joke or
19 a funny story.  When you left him or got off the phone
20 you always had a smile on your face because that was
21 one of his gifts to us, his humor.  I never laughed so
22 hard or so much when I was with him and I don't laugh
23 nearly as much now without him and I think I will miss
24 that most of all.  He loved to use his fake accents and
25 impersonations and for the past three April Fools Days

FILED, Case: 18-cv-0241 MAS Document 20-1 14 Filed 09/14/18 Page 20 of 29 PageID: 6383
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

1  I've missed the big kick Billy always got -- always had
2  when he got you.  You knew it was coming every year and
3  you tried desperately to prepare and swear next year he
4  wasn't going to fool you, but somehow he always found
5  a way to take you by surprise and secretly you were
6  always glad that he did.
7       Billy and I had dreams of spending our golden
8  years in rocking chairs on a shady beach-front porch,
9  watching our grandchildren play together in the sand.
10 That dream will never be realized.  We will not grow
11 old together and not only will he never watch his
12 grandchildren or mine, he will never have a chance to
13 watch his own sons grow up.  Billy and I will not have
14 each other to lean on in our old age.  We will not have
15 each other to help recover lost memories of the past
16 and to help fill in the blanks.  His voice will not be
17 heard at the Christmas dinner table, every holiday,
18 every birthday, every special memory we shared with
19 Billy.  He will never again proudly show the pictures
20 of his children.  There will never be another joke, no
21 more phone calls, no more warm smiles, no little
22 brother for me.  There's an emptiness without him.  My
23 sister and I are alone now.  Our family is incomplete.
24 Billy's death has taken a tremendous toll on us, but at
25 least we are adults.  We were lucky enough to have

1  Billy with us for a little while even though it was not
2  nearly long enough.  Now we are missing an important
3  part of our past, our present and our future, but we
4  have our wonderful vivid memories that will help us to
5  forever remember.
6       I've more or less said my piece, but sadly
7  now I must speak for my nephews, my brother Billy's
8  sons.  They are the ones to suffer the most grievous
9  loss because the best memories with their father were
10 yet to come.  His sons were just babies, only two and
11 four years old, when the sun rose on that April morning
12 and their daddy was nowhere to be found.  The morning
13 before these two little boys were fixtures on their
14 father's lap, the apples of his eye, but on this day of
15 their mother's choosing they became fatherless.  One
16 day they were being smothered with kisses and hugs and
17 bounced upon his knee, the next day they had no daddy
18 any more and were denied a chance to ever say good-bye.
19 They never got that last hug, that last kiss from
20 a father who clearly adored them.  They were not
21 comforted that he was in heaven, but were simply told
22 by his killer their daddy was dead and he was never
23 coming back.  Imagine what that must have been like for
24 them.  Two little boys one day so loved, so secure,
25 such a bright future, eagerly looking forward to moving

FILED, Case 3:18-cv-04241-MAS Document 02-14 Filed 09/14/18 Page 21 of 29 PageID: 6384
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

```
 1   into their first real house with a big backyard and
 2   swing set on a nice wide street in a safe and quiet
 3   neighborhood filled with children, a house their daddy
 4   had found for them, the perfect house, but a house that
 5   he would never live long enough, not even for one day,
 6   to help fill with memories of love.
 7           Anyone who knew Billy knew that the sun shone
 8   on his two little boys and no one could whip out a
 9   picture to brag faster than he could.  Excuse me.  He
10   was as proud of them as he could be.  He had so many
11   dreams for them, so many plans, so much he wanted to do
12   with them and do for them.  Excuse me.  He will never
13   get that chance and they will be the lesser for it.
14   Like most fathers, he wanted to do his best, give them
15   his best and to be the best for them.  He wanted to be
16   a good daddy and he was.  He just didn't get a chance
17   to be a good daddy nearly long enough.
18           I asked Billy's older son how he felt about
19   losing his father and he told me that he feels sad.  He
20   said he loves to remember all the good times they had
21   together and he smiles, but sometimes he gets upset and
22   it bothers him there are things about his dad he
23   started to forget.  He easily recalls watching movies,
24   cuddling with his daddy and munching on popcorn
25   together.  He remembers his trip to the circus,
```

```
 1   Radio City Christmas Show and the fun they had together
 2   at the zoo.  His daddy used to pick him up from daycare
 3   and take him for special treats like ice cream and
 4   sometimes a book or a toy, and that his daddy taught
 5   him about the Yankees, the best team in baseball, and
 6   when he remembers that his daddy had promised to teach
 7   him how to ride a bike once they moved into their new
 8   house he is the most sad.  You see, since he lost his
 9   daddy he's learned to ride that bike.  His daddy didn't
10   teach him though.  His daddy never got that chance.
11           Billy's little one has fewer memories of
12   daddy than his older brother.  In a way this is
13   a blessing because he seems not to suffer as much.
14   I fear as he gets older the lack of memories would harm
15   him the most.  He often relies on his big brother to
16   tell him about daddy and to help him remember.
17   Watching them together talking about their daddy, I'm
18   surprised how often they want to speak of him, and when
19   the oldest has memories of his father that the little
20   one was too young to share he makes believe sometimes,
21   he makes believe that he remembers and he was there,
22   too, because he wants those memories of family and good
23   times that siblings naturally want to share, memories
24   that he didn't get the chance to make, so he has
25   co-opted some of his big brother's memories as his own
```

FILED, Case 2:18-cv-02421-MAS Document 1-4 Filed 09/14/18 Page 22 of 29 PageID: 6385
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

1 and like a good big brother the older one shares, and
2 as they reminisce they cuddle sweetly, heads together,
3 very close together.  They only have each other now.
4        As I tuck them in bed at night, soft blanket
5 and squishy pillows and their little treasures hidden
6 on the side of their beds, I mourn that they will never
7 have their father's arms around them to give them
8 comfort if they wake from a bad dream.  I mourn that
9 they may one day not remember his smile, that warm
10 wonderful smile that Billy had, the smile that told you
11 that he loved you and everything would always be all
12 right, that smile that lit up a room.  They will never
13 see their father's face, the pride he felt in their
14 accomplishments.  They will have no father to answer
15 their questions, to guide them, to love them
16 unconditionally, never again.  All that they have left
17 now are their memories of the past and all we know of
18 their future is that it will not include a father who
19 had loved them with all of his heart.
20        So to honor him and keep a part of him alive
21 we will try to keep his laughter in our hearts and his
22 smile upon our faces for his two sons.  We will teach
23 them of their father's love and will comfort them as
24 best we can, but it will never be enough and it will
25 never be what they deserve.  They deserve a father and

1 a mother and a life filled only with joy and happiness.
2        Who did this?  What happened?  These are
3 questions that will need to be answered for them some
4 day and how sad that the answer will be as painful as
5 it was to tell them they had lost their father and he
6 was never coming back.  They will know it was their own
7 mother who took their father from them and I can't yet
8 imagine how we will be able to tell them without
9 hurting them.  This is what she's done to her sons.
10 This is how much she cared for them.  She has denied
11 them a father and so much more.  She's denied them
12 a normal life, a happy, carefree, Beaver Cleaver type
13 of life that we wish for all children.  They will never
14 have that life.  She has tainted them.  They will be
15 objects of pity, frustration and hushed whispers.  They
16 will forever be stigmatized by the heinous crimes she
17 has committed not just against their father but against
18 them.  Some day they will learn the truth of what
19 happened to their father.  They will also learn this
20 woman did not love them because no one who truly loved
21 her children would have ever taken their father away
22 from them, but she did.  They are her innocent victims,
23 too.  Growing up under these circumstances is a tragedy
24 no child should have to endure.  They have each been
25 sentenced to life and she alone has passed down that

Sentencing                                                                44

```
 1   sentence to her own sons.
 2           So what I have said today has served a dual
 3   purpose of sorts.  I stood not at the front of a church
 4   speaking about my brother, but in a courtroom with his
 5   killer.  It is odd because in a way this is his eulogy.
 6   My brother Billy never had a proper funeral.  We were
 7   denied the chance to mourn him in the way most families
 8   are allowed to mourn the loss of a loved one.  We were
 9   not allowed to reach out to many who loved Billy and
10   would have wanted to say good-bye to him.  Names,
11   addresses and phone numbers were kept from us.  We were
12   denied the chance to gather together and reminisce
13   about a man we loved and missed terribly.  There was no
14   casket.  There couldn't be under the circumstances.
15   Instead a small unadorned urn sat lonely upon a
16   pedestal.  So there would be no last pats on the hand
17   to say so long and Godspeed, no opportunity to lean
18   over to kiss the cheek of our loved one who had
19   departed without that last embrace, no mass, no priest
20   to bless his sole, no graveside service.  Instead much
21   more publicly than I would have liked this is where
22   I ended up having to speak about my brother.
23           Unfortunately I need to address the outright
24   lies that were told about my brother both in this
25   courtroom and wispered in the hallways.  What was said
```

Sentencing                                                                45

```
 1   in an attempt to help this killer to go free was untrue
 2   and it was despicable.  My brother was not the man that
 3   his killer needed people to believe he was and
 4   thankfully those who knew him knew the truth and took
 5   solace in the fact he knew this was not our Billy being
 6   spoken about, rather it was pure fabrication done with
 7   malice.  His vicious death was horrible enough.  Having
 8   his good character dismembered with untruths and
 9   innuendo in addition to losing him was disgusting.  My
10   brother was in no way anything less than a wonderful
11   and caring father and husband.  His family came first
12   and he was devoted to them.  He was a very good man.
13           Lastly, I would like to ask your Honor to let
14   her sentence reflect the gravity of the crime she has
15   committed.  She is a cold-blooded killer who has taken
16   a valuable life.  She has no sole and she cannot be
17   rehabilitated.  Please don't make her children suffer
18   any more knowing some day the woman who took their
19   father from them will be free and will re-enter their
20   lives.  Don't give her the opportunity to harm those
21   children again.  Make that decision for them.  Because
22   of her both parents are gone to them and it is bad
23   enough they will relive this horror for the rest of
24   their lives.  Let my nephews have some peace in healing
25   now.  This woman has displayed an inappropriate haughty
```

FILED, Clerk of the Appellate Division, July 18, 2018, A-002180-14

FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

Case 2:18-cv-03441-MAS Document 1-18 Filed 09/14/18 Page 24 of 29 PageID: 6387

1    arrogance for three years and since she committed this
2    crime she has not shown one ounce of remorse, shame or
3    passion.  Give her a sentence that will wipe that
4    arrogance off of her face.  Never let her have hope.
5    We have no hope.  She had no pity.  Show her no pity.
6    She showed no mercy.  Give her no mercy.  She alone
7    passed sentence on her husband and her sons and she
8    chose for them a life sentence and I ask you on behalf
9    of our family to give her a life sentence in return.
10            Thank you.
11            THE COURT:  Thank you, Miss Ligosh.
12            All right.  Ladies and gentlemen, I
13   understand that there are others of you who would wish
14   to speak to the Court and make statements here, but, as
15   I hope the attorneys have advised you, our law imposes
16   guidelines and rules on who may speak at sentencing.
17   I want to assure you that even though you may not have
18   had a chance to speak, every letter that has been
19   written to the Court has been carefully read by the
20   Court and has been considered prior to this sentencing
21   proceeding today, so for those of you who have written
22   I thank you for your input.
23            Mr. Tacopina, does the defendant wish to make
24   a statement before sentence is imposed?
25            MR. TACOPINA:  No, your Honor.

1            THE COURT:  All right.  Counsel, thank you
2    very much for your input.
3            Again in addition to the documents that I've
4    made reference to earlier, I now have had a chance to
5    consider the arguments of counsel, the statements made
6    today by the victims and witnesses in this matter and,
7    as the -- as all the attorneys have pointed out, in
8    this case the crime of murder carries with it a minimum
9    term of 30 years and a maximum term of life
10   imprisonment.  It is the responsibility of the Court to
11   review all of this information that has been provided
12   to the Court and to consider whether there are
13   aggravating factors that are present that would warrant
14   imposing a greater term than the minimum term or
15   whether there are mitigating factors that would cause
16   the Court to lean towards the minimum term.  I have
17   done that to the best of my ability and after
18   conducting an analysis of the aggravating factors in
19   this matter I am convinced, first of all, that the
20   nature and circumstances of this offense do in fact
21   constitute a very significant aggravating factor in
22   that the crime was committed in an especially heinous,
23   cruel and depraved manner.  The nature and the
24   complexity and the scope of this criminal episode
25   involved many, many overt actions committed over

FILED, Case 2:18-cv-02421-MAS Document 2-14 Filed 09/14/18 Page 25 of 29 PageID: 6388
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

1  a three-week period spanning four different states and
2  reflected a willfulness and a malice that goes far
3  beyond the elements of the crime of murder in our law.
4        The desecration of William McGuire's remains
5  was particularly heinous and depraved.  His body was
6  treated as trash.  It was cut and sawed apart and then
7  packaged in garbage bags.  His remains were left to
8  decompose in the waters of another state without
9  identification so that his family and friends might
10 always be deprived of a dignified funeral service and
11 burial.
12       The depravity of the murder was further
13 manifested by the efforts on the part of the defendant
14 to portray William McGuire as an abusive husband and
15 a chronic gambler who was indebted to organized crime
16 figures as part of her attempt to shift the blame for
17 his murder to others, and, as the Attorney General
18 pointed out, during the course of the trial there was
19 simply no credible evidence to suggest that this
20 characterization of Mr. McGuire was in any way
21 accurate.  But perhaps most tragically the murder of
22 William McGuire and the attack on his character has
23 surely caused grave harm to his children.  They must
24 now grow up without a mother or father and their
25 memories of both will be distorted and confused by the

1  web of deception created by the defendant.
2        The depravity of this murder simply shocks
3  the conscience of the Court.
4        Clearly as another aggravating factor the
5  Court finds that there is indeed a need to deter this
6  defendant and others from this type of horrendous
7  criminality.
8        Evidence was presented to this Court that the
9  jury found credible that this defendant was carrying on
10 a long-term intimate affair with a colleague who she
11 was at some point claiming to have a future with after
12 they both left their spouses.  The need for deterrence
13 is particularly important in cases of calculated
14 premeditated murder.  The Court must impose a sentence
15 that makes it clear that one who callously destroys
16 a family by resorting to violence and murder to
17 accomplish her own selfless ends must face the most
18 severe consequences that the law would provide.
19       These are the aggravating factors that this
20 Court finds to be significant.
21       I do not find that the vulnerability of the
22 victim or that the risk that this defendant would
23 necessarily commit another crime can constitute
24 an aggravateding factor in this case, and surely
25 a defendant has a right to trial and if a defendant

FILED, Case 2:18-cv-02411-MAS Document 2-18 Filed 09/14/18 Page 26 of 29 PageID: 6389
FILED, Clerk of the Appellate Division, July 18, 2018, A-002184-14
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

 1  chooses to plead not guilty and go to trial this Court
 2  cannot under our law characterize that as a lack of
 3  remorse and impose greater punishment on the defendant,
 4  so I cannot find those aggravating factors that the
 5  Attorney General requests.
 6        Now, with respect to mitigating factors,
 7  incredibly the defendant argues that her imprisonment
 8  and the resultant excessive hardship to her children
 9  should be considered as a mitigating factor.  There's
10  no doubt that because of her cruel and deliberate
11  actions the McGuire children have been deprived of both
12  their parents, but they are, from everything that I can
13  tell, being well-cared for by their father's family.
14  To consider the hardship imposed on them as a
15  mitigating factor that should benefit the defendant
16  would make in my view a mockery of our system of
17  justice.
18        Counsel for the defense also argue that the
19  character and attitude of the defendant indicate that
20  she is unlikely to commit another offense, and they
21  have indeed provided the Court with numerous, numerous
22  letters of support for her.  Ironically the State
23  argues that the defendant's character is an aggravating
24  factor and offers equally persuasive evidence.
25        Frankly, given the requirement of a mandatory

 1  30-year prison term, neither of these factors seem
 2  quite significant to the Court with respect to the risk
 3  of the defendant committing another offense.  In any
 4  event, I surely cannot conclude that the defendant's
 5  character is indeed a mitigating factor.  While it
 6  clearly has been demonstrated that the defendant has
 7  done many good deeds, the record in this case also
 8  reveals that she has been a ruthless, calculating and
 9  manipulative individual.  Regrettably history is
10  replete with evil-doers have done some good deeds and
11  who also have their supporters, but in this matter
12  before the murder of her husband and desecration of his
13  remains the defendant carried on affairs, extramarital
14  affairs, even while expecting one of her children.
15        After the murder the defendant callously
16  ridiculed her husband and even joked about his death on
17  intercepted telephone conversations with friends and
18  relatives.  As she orchestrated her web of deception
19  she manipulated friends, friends like Jim Finn, and
20  relatives to help her and she discouraged them from
21  cooperating with the investigation.  Under these
22  circumstances her character cannot in any way be
23  considered a mitigating factor.
24        Finally, the defense argues that the
25  defendant has led a law-abiding life for a substantial

FILED, Case 2:18-cv-02431-MAS Document 1-84 Filed 09/14/18 Page 27 of 29 PageID: 6390
FILED, Clerk of the Supreme Court, 22 Aug 2017, 079925

```
 1  period of time before the commission of these present
 2  crimes.  While this is technically accurate, the Court
 3  finds this factor to be largely insignificant since the
 4  defendant was previously charged with perjury before
 5  a municipal court in Union County but allowed the
 6  opportunity for Pretrial Intervention as recently as
 7  1998.  Despite the chance afforded the defendant
 8  through PTI, she once again made false statements to
 9  obtain a handgun in Pennsylvania in 2004 and, of
10  course, now has also been convicted of perjury before
11  the Family Court with respect to this criminal episode.
12          So, after careful consideration, the Court is
13  clearly convinced that these two very aggravating and
14  significant factors substantially outweigh this one
15  mitigating factor which again I find to be
16  insignificant.
17          The overall circumstance of a crime has been
18  described in our law as the single most important
19  sentencing factor.  In this case the crime was so
20  heinous, so cruel and so depraved that the Court finds
21  that the maximum sentence should be imposed.  So as to
22  count one of the indictment charging the murder of
23  William McGuire, the defendant is committed to the
24  custody of the Department of Corrections to serve
25  a term of life imprisonment and the defendant must
```

```
 1  serve 85 percent of the maximum term before being
 2  eligible for parole.  In addition, the defendant is
 3  ordered to pay certain mandatory fines and penalties
 4  which the Court will set forth on the Judgment of
 5  Conviction.
 6          The Attorney General has asked the Court to
 7  impose a very heavy fine and to order restitution to
 8  compensate the children for the loss of their father's
 9  income.  I've carefully reviewed the presentence
10  report.  The Court may only impose fines and
11  restitution based upon the defendant's ability to pay.
12  I am satisfied from reviewing the presentence report
13  that this defendant is virtually bankrupt and that her
14  legal fees and other debts make it impossible for her
15  at this time to pay any substantial fine or
16  restitution.  I am also satisfied that in light of the
17  circumstances of these proceedings and this sentence
18  that any additional support that the children need or
19  any compensation that the children need can be dealt
20  with in the Family Court under more appropriate
21  proceedings.
22          Under our law when one is convicted of
23  a first degree crime the Court must also order a period
24  of parole supervision for five years upon the release
25  of the defendant.
```

Sentencing                                                                54

1          As has been mentioned by counsel, count two
2    charging the possession of a handgun for an unlawful
3    purpose will merge with count one.
4          As to count three, the desecration of the
5    remains of William McGuire, the defendant is committed
6    to the custody of the Department of Corrections to
7    serve a term of imprisonment of 10 years with a period
8    of parole ineligibility of five years.  Since the
9    desecration of the remains of William McGuire was an
10   integral part and a continuation of the same criminal
11   episode that included this heinous murder, the sentence
12   must run concurrent to count one.
13         I do not agree with the Attorney General that
14   this represents a free crime.  The desecration that has
15   been considered by this Court has been a significant
16   element that causes this Court to consider the
17   aggravating factors associated with the murder and to
18   impose the maximum sentence allowed by law.
19         As to count four of the indictment, the
20   defendant is committed to the custody of the Department
21   of Corrections to serve a term of imprisonment of five
22   years with a period of parole ineligibility of two
23   and-a-half years.  Since the perjury before the Family
24   Court did involve a separate and distinct crime
25   committed at a different time and a different location

Sentencing                                                                55

1    and also constituted an offense against our judicial
2    system and our system of justice, the sentence for
3    count four shall be served consecutive to counts one
4    and two.
5          The defendant has credit for time served of
6    148 days.
7          Under our law the defendant has a right to
8    appeal within 45 days.  If the defendant cannot afford
9    an attorney in order to exercise her right to appeal
10   an attorney will be assigned to represent her.  If the
11   attorney does not exercise her right to appeal within
12   45 days then she may be deemed to have waived her right
13   to appeal.
14         Counsel, are there any questions of the
15   Court?
16         MS. PREZIOSO:  No, your Honor.
17         MR. TACOPINA:  No, sir.
18         THE COURT:  All right.  Counsel, thank you
19   for your patience and cooperation.
20         The defendant is remanded to the Department
21   of Corrections at this time.
22         And, ladies and gentlemen, thank you for your
23   patience and cooperation.
24         These proceedings are concluded.
25                          *  *  *

```
 1                    C E R T I F I C A T I O N
 2
 3
 4   I, Linda Urbaniak, Certified Court Reporter, License
 5   Number XI00678, an Official Court Reporter in and for
 6   the State of New Jersey, do hereby certify the
 7   foregoing to be prepared in full compliance with the
 8   current Transcript Format for Judicial Proceedings and
 9   is a true and accurate compressed transcript of my
10   stenographic notes taken in the above matter to the
11   best of my knowledge and ability.
12
13
14
15                      Linda Urbaniak
16                      Linda Urbaniak
17                      Certified Court Reporter
18                      Official Court Reporter
19                      Middlesex County Courthouse
20                      56 Paterson Street
21                      New Brunswick, New Jersey
22
23
24
25   Date:   October 26, 2007
```